IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE,                              )
                                       )
        Plaintiff,                     )        CIVIL ACTION FILE NO.
                                       )
v.                                     )        1:21-cv-04859-TWT
                                       )
EMORY UNIVERSITY,  INC.,               )        JURY TRIAL DEMANDED
a Georgia Nonprofit Corporation,       )
                                       )
        Defendant.                     )
_____)

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**HOLLAND & KNIGHT LLP**
Joshua I. Bosin
Georgia Bar No. 143054
John M. Hamrick
Georgia Bar No. 322079
Megan C. Eckel
Georgia Bar No. 542556

Regions Plaza, Suite 1800
1180 West Peachtree Street NW
Atlanta, Georgia  30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  megan.eckel@hklaw.com

Counsel for Defendant
Emory University

Defendant Emory University, Inc. ("Emory" or the "University") condemns sexual misconduct in all forms and is committed to maintaining an environment that is free of unlawful harassment and discrimination.  Emory does not tolerate sexual misconduct in its living and learning community and takes seriously every allegation and report of sexual misconduct.  In support of its Motion, Emory states as follows:

## INTRODUCTION

Plaintiff, a former Juris Doctor candidate, commenced this action asserting claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), and Georgia law concerning Emory's purported response to Plaintiff's allegations of sexual assault perpetrated by John Doe, a former Master of Laws candidate.  Critically, all of Plaintiff's Title IX claims are barred by the statute of limitations.  And despite her protestations, Plaintiff's 121-page Complaint confirms that Emory lawfully investigated Plaintiff's Title IX complaint and granted most of her requests for supportive measures consistent with the University's Title IX policies and procedures.  The Complaint also shows on its face that Emory never entered a final outcome establishing that Plaintiff violated the University's Sexual Misconduct Policy so as to cause Plaintiff to suffer any adverse educational impact. For these reasons, and because Plaintiff's breach of contract claims also fail as a matter of law, the Complaint must be dismissed in its entirety with prejudice.

## ARGUMENT AND CITATION OF AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of claims that are not plausible on the face of a complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's allegation must raise a right to relief above the speculative level. Although a plaintiff need not plead detailed factual allegations, she must rely on "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, even assuming Plaintiff's factual allegations to be true, as this Court must when considering this Motion,[1] Plaintiff fails to state any valid causes of action against Emory.  Because Plaintiff's substantial pleading defects cannot be cured by amendment, all of Plaintiff's claims must be dismissed with prejudice instanter.  *See, e.g.*, *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332-33 (2020).

## I.    PLAINTIFF'S TITLE IX CLAIMS ARE UNTIMELY.

The Eleventh Circuit has held that "a Title IX claim for damages is most closely analogous to a common law action for personal injury; therefore, the statute

---

[1]    This Court may "properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'" *Sarver v. Jackson*, 344 F. App'x 526, 527 (11th Cir. 2009) (citation omitted).

of limitations for personal injury actions controls." *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999).  In Georgia, personal injury actions must "be brought within two-years after the right of action accrues."  O.C.G.A. § 9-3-33.  The statute "cover[s] 'not only injuries to the physical body, but every other injury, for which an action may be brought, done to the individual, and not to his property.'"  *M.H.D.*, 172 F.3d at 803 (citation omitted).  Accordingly, Plaintiff's Title IX claims are subject to Georgia's two-year statute of limitations.  *See Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:11-cv-228-ODE, 2012 WL 12893538, *4 n.11 (N.D. Ga. Mar. 20, 2012), *aff'd sub nom. Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906 (11th Cir. 2013).

Federal law, however, controls when Plaintiff's Title IX cause of action accrued.  *See, e.g., Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1275 (11th Cir. 2014) (stating that if a federal court borrows a limitations period from state law, federal law determines the date on which that period begins).  The general federal rule for accrual is "the discovery rule," meaning that a cause of action accrues "when the plaintiff knew or should have known of h[er] injury and its cause."  *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997).

Here, Plaintiff's Title IX claims (Counts I-IV) are barred by the statute of limitations because they accrued **<u>and</u>** expired **<u>prior</u>** to Plaintiff filing her Complaint

3

on November 28, 2021.  Plaintiff's Title IX claims began to ripen at the earliest on August 18, 2018 (when the alleged sexual assault occurred (Compl. ¶¶ 29-34)) and at the latest on November 5, 2019 (when the last pending Title IX allegation was withdrawn and ultimately closed (*Id.* ¶ 342)).[2]  For the sake of argument, even if this Court takes the latter date as the most generous interpretation of when Plaintiff's claims became legally cognizable, Plaintiff was required to initiate suit not later than **November 5, 2021**.  This she did not do.

Because Plaintiff's Title IX causes of action were known to her and became actionable **more than** two years before she filed her Complaint, Plaintiff's Title IX claims are time barred as a matter of law and must be dismissed with prejudice.

## II.    PLAINTIFF'S TITLE IX CLAIMS FAIL AS A MATTER OF LAW.

### A.    Plaintiff's Title IX Discrimination Claims.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).   "[T]o establish a gender

---

[2]    *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 989 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) (holding Title IX claim accrued when the student "had both knowledge of the injury and knowledge of the causal link between the injury and [school district] from the moment the injury began but refrained from reporting the injury").

discrimination claim under Title IX, a plaintiff must allege that the defendant discriminated against [her] because of sex, the discrimination was intentional, and the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Doe v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-cv-682-T-30EAJ, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015) (citation omitted).

Here, Plaintiff asserts three separate theories of Title IX liability—deliberate indifference, erroneous outcome, and selective enforcement.  As an initial matter, "'[n]either the Supreme Court nor [the Eleventh Circuit] has established a framework for analyzing Title IX challenges to university disciplinary proceedings.'" *Doe v. Samford Univ.*, No. 2:21-cv-00871-ACA, 2021 WL 3617702, at *6 (N.D. Ala. Aug. 15, 2021) (citing *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018)).  Although the Eleventh Circuit frequently has discussed the deliberate indifference theory in its Title IX jurisprudence, the erroneous outcome and selective enforcement theories are products of the Second Circuit's opinion in *Yusuf v. Vasar College*, 35 F.3d 709, 715 (2d Cir. 1994).[3]

Many sister Circuits, though, have declined to adopt *Yusuf*'s evaluative

---

[3]     In *Valencia College*, "the Eleventh Circuit assumed the applicability of *Yusuf's* erroneous outcome theory" in passing "and noted the existence of the selective enforcement theory but 'ma[d]e no comment (and indulge[d] no assumption) about' the applicability of that theory."  *Samford Univ.*, 2021 WL 3617702, at *6 (citing *Valencia*, 903 F.3d at 1236 & n.13).

framework.[4]  *See Samford Univ.*, 2021 WL 3617702, at *6 ("Nothing in Title IX indicates that courts must use any specific doctrinal test to determine whether a plaintiff can state or prove a claim of sex discrimination.").  For example, in *Doe v. Purdue University*, the Seventh Circuit expressed a preference to "ask the question more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against [Jane] 'on the basis of sex?'"  928 F.3d 652, 667-68 (7th Cir. 2019).  And that is because the text of Title IX itself requires only that a plaintiff establish that sex was "the basis" for an institution's disciplinary determination in any given case for liability to attach.  *See* 20 U.S.C. § 1681(a).  Regardless of which analytical framework is used to evaluate Plaintiff's claims, she has not and cannot plead a viable gender discrimination claim as a matter of law.

### 1. Deliberate indifference (Count I).

Finding a school liable under Title IX "for student-on-student sexual harassment claims . . . is far more rigorous than a claim for teacher-on-student harassment."  *Hill v. Cundiff*, 797 F.3d 948, 968 (11th Cir. 2015).  *See also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650-53 (1999).  To state a prima facie case,

---

[4]     *See, e.g.*, *Doe v. Univ. of Denver*, 1 F.4th 822 (10th Cir. 2021); *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230 (4th Cir. 2021); *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020); *Doe v. Univ. of Scis.*, 961 F.3d 203 (3d Cir. 2020).

Plaintiff must show the following:

> First, the defendant must be a Title IX funding recipient.
> Second, an 'appropriate person'—one with the authority
> to address the harassment—must have 'actual knowledge
> of discrimination in the recipient's programs.' Third, the
> recipient must respond with **deliberate indifference** to the
> known acts of harassment in its programs.  Fourth, the
> recipient's deliberate indifference must 'subject[ ] the
> plaintiff to further discrimination.'  Fifth, the harassment
> must be 'severe, pervasive, and objectively offensive.'
> Sixth, the harassment must effectively bar[ ] the victim's
> access to an educational opportunity or benefit.'

*Garrett v. Univ. of S. Fla. Bd. of Trustees*, 824 F. App'x 959, 964 (11th Cir. 2020)

(emphasis added) (citations omitted).  And to establish deliberate indifference, a

plaintiff must show that a recipient's response was "clearly unreasonable in light of

the known circumstances[,]" thus creating a contextual standard that is "rigorous and

hard to meet."  *Id*. (quoting *Davis*, 526 U.S. at 648; *Hill*, 797 F.3d at 975).  In *Davis*,

the Supreme Court expressly recognized that "[i]n an appropriate case, there is no

reason why courts, on a motion to dismiss, for summary judgment, or for a directed

verdict, could not identify a response as not 'clearly unreasonable' as a matter of

law."  *Davis*, 526 U.S. at 649.  This is such a case.

Plaintiff avers that Emory's response to her complaint was clearly

unreasonable because, *inter alia*, Emory purportedly favored John Doe over

Plaintiff, which allegedly resulted in Plaintiff not receiving supportive

accommodations and protections, John Doe filing a retaliation claim, Emory issuing unfavorable investigation reports, Emory conducting a defective disciplinary proceeding concerning John Doe's complaint, and Emory refusing to allow Plaintiff to reopen her withdrawn Title IX complaint.  (Compl. ¶¶ 374-75.)  Because of all this, says Plaintiff, she was "forced" to transfer to a different law school to complete her legal degree.  (*Id*. ¶ 376.)  But Plaintiff's allegations are insufficient to establish that Emory acted with deliberate indifference.

Rather, the University took immediate steps in response to Plaintiff's purported sexual assault after she initiated a Title IX complaint against John Doe on March 4, 2019.  (*Id*. ¶¶ 56-57.)  Indeed, the very next day, Emory's Department of Title IX issued No Contact Orders to both parties and the University launched a comprehensive investigation.  (*Id*. ¶¶ 58, 62.)

During the Title IX investigative process, Plaintiff requested the following supportive measures: 1) to attend her First Amendment class without John Doe present;[5] 2) to delay an assigned oral argument; 3) to delay her 1L exams; and 4) to take her 1L exams at a university in her home state.  (*Id*. ¶¶ 60, 95.)  Emory ultimately granted Plaintiff's requests concerning her 1L exams.  (*Id*. ¶¶ 137, 168).

---

[5]     The No Contact Orders required the parties to sit on opposite sides of the classroom and avoid contact in the common spaces of the law school.  (*Id*. ¶ 83.)

Emory denied Plaintiff's request concerning her First Amendment class because of the American Bar Association's rules at the time concerning remote learning (*Id.* ¶ 61) and denied Plaintiff's request concerning her oral argument assignment because the delay would "fundamentally undermine the educational purpose of that exercise" and be "disadvantageous" to Plaintiff's partner.  (*Id.* ¶ 96.)

Despite the no-contact order, on March 20, 2019, Plaintiff's father called John Doe and, among other things, implored him to transfer out of the First Amendment class he shared with Plaintiff.  (*Id.* ¶ 69.)  That call led to John Doe filing a Title IX retaliation complaint against Plaintiff.  (*Id.* ¶¶ 71, 74, 76.)  And pursuant to the University's Sexual Misconduct Policy, Emory was required to investigate John Doe's allegations of retaliation.[6]  (*See* Ex. A at 4, "Retaliation Prohibited.")

On August 14, 2019, Emory completed both Title IX investigations and issued corresponding reports, to which the parties were allowed to respond.  (*Id.* ¶¶ 178, 210.)  However, on the day the responses were due—August 23, 2019—Plaintiff

---

[6]     Emory attaches true and complete copies of Emory's Sexual Misconduct Policy and Emory Law's Student Handbook to its Motion as Exhibit "A."  The Sexual Misconduct Policy (incorporated into the Student Handbook) is referenced in the Complaint, is central to Plaintiff's claim, and its authenticity is not in dispute. (Compl. ¶¶ 411-412.)  As such, this Court may consider these materials without converting this Motion pursuant to Federal Rule of Civil Procedure 12(d).  *See, e.g.*, *Williams v. Corp. of Mercer Univ.*, No. 5:20-cv-361 (LAG), 2021 WL 2328009, at *2 (M.D. Ga. June 7, 2021).

withdrew her complaint, and, believing that John Doe's complaint would also be dismissed because it was "dependent" on hers, did not submit a response to either report. (*Id*. ¶¶ 211, 216-17.)

On August 26, 2019, Emory informed Plaintiff that the University intended to continue the Title IX process in connection with John Doe's complaint. (*Id*. ¶ 218.) Emory issued a Notice of Charge on August 28, 2019 indicating there was sufficient information to support John Doe's allegations of retaliation. (*Id*. ¶ 225.) Plaintiff contested the Notice of Charge and initiated a formal hearing. (*Id*. ¶ 226.) But on November 5, 2019, John Doe withdrew his complaint, thus ending the Title IX process entirely. (*Id*. ¶ 342.) Neither complaint was ever fully adjudicated.

On the facts alleged by Plaintiff, it cannot be said that Emory's response to her complaint was clearly unreasonable. *See, e.g.*, *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 637-39 (W.D. Va. 2016) (dismissing plaintiff's deliberate indifference claim because the college quickly interviewed the alleged attacker, held a hearing, and took disciplinary action against him and noting that the standard to trigger liability is "clearly unreasonable," not whether the college's response was reasonable or proper). The Complaint shows that Emory began to investigate Plaintiff's complaint immediately, issued no-contact orders, provided appropriate supportive measures, and ultimately ended the Title IX process when Plaintiff

formally withdrew her complaint.  (Compl. ¶¶ 56-58, 62, 137, 168, 216.)  Moreover, Plaintiff participated in the Title IX process with the assistance of various advisors and was allowed extensions of several critical investigative deadlines.  (*Id*. ¶¶ 62, 115, 126, 157-59, 170, 227-230).

As highlighted by the Eleventh Circuit in *Garrett*, "[i]n cases where this Court has found potential Title IX liability for student-on-student harassment, the school responded to a report of sexual assault by effectively doing nothing" and "the school's indifference also caused, at least in part, the actual assault."  *Garrett*, 824 F. App'x at 965.  *See also Hill*, 797 F.3d at 972-73 (reversing summary judgment, finding plaintiff established deliberate indifference under Title IX because the middle school failed "to help Doe in any way" after she was sodomized in a bathroom); *Williams*, 477 F.3d at 1296-97 (reversing dismissal, finding plaintiff alleged sufficient facts to demonstrate deliberate indifference when the university took no corrective action for almost eleven months after the student's reported gang-rape and explaining that the university "caused Williams to be the victim" of a gang-rape).  Plaintiff's factual allegations fail to make such a showing in this case.

Furthermore, Emory was not required to grant all of Plaintiff's requests for supportive measures, including her plea that John Doe be punished by removing him from the First Amendment class he shared with Plaintiff before the University's

investigation even commenced.  (Compl. ¶ 60.)  To be sure, *Davis* does not require

funding recipients to remedy peer harassment, nor does it force funding recipients

to suspend or expel every student accused of misconduct.  *See Davis*, 526 U.S. 648-

49.  All that *Davis* requires is that a school not act "clearly unreasonably in light of

the known circumstances," and it cautions "courts [to] refrain second-guessing the

disciplinary decisions made by school administrators."  *Id*.  *See also Garrett*, 824 F.

App'x at 964 (noting that Title IX "does not require a school to 'remedy' peer

harassment" but "merely to respond to known peer harassment in a manner that is

not clearly unreasonable.")  Lastly, as to John Doe's complaint, Emory was required

to afford him the same protections available under the Sexual Misconduct Policy to

which Plaintiff was entitled.

In sum, the heart of Plaintiff's claim appears to be that because Emory did not

accede to each of her demands, and its response to her complaint was insufficient.

But "Title IX does not grant a victim of student-on-student harassment the right to

choose a school's remedial measures."  *Garrett*, 824 F. App'x at 965 (citing *Davis*,

526 U.S. at 648).  The face of the Complaint shows that Emory's response to

Plaintiff's Title IX report was not "clearly unreasonable."  In fact, Plaintiff's

allegations evidence quite the contrary to be true.  Accordingly, Plaintiff's deliberate

indifference claim is due to be dismissed with prejudice.

### 2.      Erroneous outcome (Count III).

Plaintiff's erroneous outcome claim fails because John Doe's complaint was never adjudicated.   Under the erroneous outcome theory of liability, "a student seeking to challenge a university disciplinary proceeding 'must show both that [s]he was 'innocent and wrongly found to have committed an offense' and that there is 'a causal connection between the flawed outcome and gender bias.'"   *Whitaker v. Bd. of Regents of Univ. Sys. of Ga.*, No 20-13618, 2021 WL 4168151, at *3 (11th Cir. Sept. 14, 2021) (quoting *Valencia Coll.*, 903 F.3d at 1236).   Here, Plaintiff was not found to have committed any offense.   In fact, there was no hearing outcome at all.

Plaintiff alleges that her gender "caused the University to reach erroneous outcomes throughout [Emory's Office of Title IX's] disciplinary proceedings for [Plaintiff's] complaints against [John Doe], and [John Doe's] baseless countercomplaints against her." (Compl. ¶ 392.)  But the Complaint fails to identify the alleged "erroneous outcomes" reached by Emory.   This is because the Title IX complaints of Plaintiff and John Doe were withdrawn **before** there ever was an outcome in either case.  (*Id*. ¶¶ 216, 342.)  A disciplinary decision was never reached and sanctions were never issued, so Plaintiff cannot show that she was "'wrongly found to have committed an offense,'" the gravamen of an erroneous outcome claim. *Whitaker*, No 20-13618, 2021 WL 4168151, at *3 (affirming district court's

dismissal of student's erroneous outcome claim because student was found "not responsible" for sexual harassment and thus could not show that he was "wrongly found to have committed an offense") (quoting *Valencia Coll.*, 903 F.3d at 1236). Because the allegations Plaintiff adduces in support of her claim could never support an erroneous outcome theory of liability, Count III of the Complaint must be dismissed with prejudice.

### 3. Selective enforcement (Count IV).

Plaintiff presupposes that Emory selectively enforced its Sexual Misconduct Policy in a way that amounted to unlawful gender discrimination. But the Complaint is bereft of any allegations tending to support Plaintiff's specious theory. A selective enforcement "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F. 3d at 715. Plaintiff "must allege sufficient facts to permit the plausible inference that a 'similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender.'" *Whitaker v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 118-141, 2020 WL 4939118, at *3 (S.D. Ga. Aug. 24, 2020), *aff'd*, No. 20-13618, 2021 WL 4168151 (11th Cir. Sept. 14, 2021) (citation omitted). Because Emory did not discipline Plaintiff, her selective enforcement claim must be based on Emory's decision to initiate

disciplinary proceedings against her after investigating John Doe's complaint and issuing a Notice of Charge.

Plaintiff broadly avers that Emory treated John Doe "vastly more favorably" in its response to Plaintiff's and John Doe's complaints and identifies fifteen purported ways (often pleaded inconsistently) in which Emory allegedly treated John Doe more favorably than Plaintiff.  (Compl. ¶¶ 402-04.)  Yet, other than offering these examples as mere conclusory allegations, Plaintiff fails to plead facts to show how the purported differential treatment was, in fact, **_because of_** her gender.[7]  (*Id.* ¶¶ 394, 401.)  Instead, Plaintiff speculates that almost every decision—especially those with which she does not agree—made by Emory in connection with her complaint was based solely on her gender.  Such allegations are insufficient to support a selective enforcement claim.  *See, e.g.*, *Samford Univ.*, 2021 WL 3617702, at *10 (dismissing claim because other than "utterly conclusory" statements, a male

---

[7]     For example, Plaintiff self-servingly claims that "Emory officials" have all made statements and engaged in actions that demonstrate a clear pattern of gender bias against women who have been raped, including retaliating against female rape survivors, giving male rapists accommodations and protective measures that are denied to female victims, and presuming that male rapists are more credible than female victims.  (Compl. ¶ 394.)  Plaintiff's conclusory allegations do not pass the muster of *Twombly* and *Iqbal*, which require "more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Plaintiff foundationless allegations should be ignored.

student alleged no facts to show that the university treated sexual assault complaints differently because of the gender of the complainant).

Moreover, Plaintiff and John Doe were not similarly situated complainants. To begin with, the conduct underlying Plaintiff's complaint against John Doe (sexual assault) is of greater severity, degree, and kind than the conduct underlying John Doe's complaint against Plaintiff (retaliation based on Plaintiff's father calling John Doe). Additionally, Plaintiff withdrew her complaint after Emory issued an investigative report but before issuing a Notice of Charge,[8] whereas John Doe continued his complaint through a formal hearing but withdrew it before Emory issued a final outcome. (Compl. ¶¶ 178, 216, 225-26, 342.) "Given the substantial differences between the two kinds of complaints," Plaintiff "cannot draw a reasonable inference (that is, move beyond speculation) that" Emory's decisions as to either complaint, were motivated by Plaintiff's gender. *Whitaker*, 2021 WL 4168151, at *3 (affirming dismissal of selective enforcement claim because plaintiff and "Roe" were not similarly situated comparators). As such, Plaintiff's selective enforcement claim must be dismissed with prejudice as a matter of law.

---

[8] By the time Plaintiff sought to reinstate her complaint, neither Plaintiff nor John Doe were participants in any of Emory's education programs or activities. (Compl. ¶¶ 12, 199, 216, 342.)

**B.      Plaintiff's Title IX Retaliation Claim (Count II).**

Plaintiff asserts that Emory retaliated against her because she engaged in protected activity by, *inter alia*, filing a Title IX complaint against John Doe. (Compl. ¶ 380.)  To establish a prima facie case of retaliation, Plaintiff must show: 1) she engaged in a statutorily protected activity; 2) she suffered an adverse action; and 3) a causal connection exists between the two events or occurrences.  *See, e.g.*, *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911-12 (11th Cir. 2013) (affirming dismissal of Title IX retaliation claims because certain alleged acts were not sufficiently adverse to state a retaliation claim and plaintiff otherwise failed to allege a causal link between the protected conduct and alleged adverse acts).

As an initial matter, Plaintiff cannot show she suffered any adverse action because the events of which she complains lack the requisite degree of materiality. "The retaliatory action must be materially adverse, meaning that it would have 'dissuaded a reasonable [individual] from making or supporting a charge of discrimination.'" *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 686 (11th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  In making the "reasonable person" determination under *Burlington*, "[c]ontext matters," and thus the Court must assess the "significance" of the action

in light of "the particular circumstances."[9]   *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 36 (D.D.C. 2018) (citing *Burlington*, 548 U.S. at 69) (granting motion to dismiss student's retaliation claim because the court could not conclude that a sexual assault victim would decline to report an alleged rape, pursue a remedy, or file a complaint out of a concern that her university might, in retaliation, "[i]mped[e]" her "sexual assault advocacy efforts").

Plaintiff alleges a litany of alleged "materially adverse actions" in the Complaint. (Compl. ¶ 383(a)-(o).)   These are, in large part, nothing more than Plaintiff's grievances about the Title IX process itself and insufficient to establish actionable retaliation as a matter of law.[10]   Perhaps more importantly, though, all but one of the alleged adverse actions took place **<u>after</u>** Plaintiff filed her initial Title IX complaint and **<u>before</u>** Plaintiff attempted to reinstate her complaint after it was later

---

[9]     The "standard for judging harm must be objective.  An objective standard is judicially administrable.  It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington*, 548 U.S. at 68.

[10]     *See, e.g.*, *S.K. North Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 805 (W.D. Pa. 2016) ("To show materially adverse action plaintiff advances the very conduct that . . . gave rise to her complaints of discriminatory conduct . . . . [s]uch circular reasoning seeks to circumvent the Supreme Court's admonishment against focusing on the original claim of discrimination in order to assess whether an objective showing of retaliatory action has been made.").

withdrawn.  (*Id*. ¶ 232.)[11]  Put differently, the alleged adverse actions from which Plaintiff claims to have suffered **did not** dissuade her from engaging in any statutorily protected activity.  The only alleged "adverse action" that occurred after Plaintiff attempted to reinstate her complaint was the hearing on John Doe's complaint.  (*Id*. ¶ 232, 265, 383(j), 322.)  But that hearing related to Plaintiff's alleged conduct separate and apart from her Title IX complaint.

On the facts asserted by Plaintiff, this Court cannot conclude that an alleged sexual assault victim would decline to report offending misconduct on the theory that she **might** at some unknown point in the future take some independent action causing a separate Title IX claim against her.  That mere possibility is insufficient to establish actionable retaliation.  Because Plaintiff has not and cannot plead facts sufficient to establish a viable claim, her retaliation count is due to be dismissed.

## III.   PLAINTIFF'S CONTRACT CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiff's Breach Of Contract Claim (Count V).

The Complaint fails to state a claim for breach of contract because it does not identify a contract, or even a specific contractual provision, that Emory purportedly breached.  "In Georgia, '[t]he essential elements of a breach of contract claim are

---

[11]   One additional allegation appears to be related to her attempt to reinstate her Title IX claim.  (Compl. ¶ 383(k)).

(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom.'" *Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (citation omitted). "[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Id*. at 1296 (granting motion to dismiss as the "allegations fail[ed] to state a claim for breach of contract because Plaintiff never alleged a contractual provision Defendant breached."). Here, Plaintiff generally refers to a contract or a "contractual relationship" with Emory but fails to identify a contractual provision, or even the contract, that is the subject of her claim. (Compl. ¶¶ 5, 6, 11, 25-27, 409.) That is insufficient as a matter of law.

Plaintiff appears to contend that the University breached the unidentified contract when Emory purportedly failed to provide adequate policies, failed to follow its policies, and failed to follow the Clery Act.[12] (*Id*. ¶¶ 410-415.) To the extent Plaintiff claims the Sexual Misconduct Policy is the operative contract (which we assume for the sake of argument), the Complaint does not properly allege

---

[12] Plaintiff alleges that Emory "breached the terms of its contract with [Plaintiff] incorporated from federal law, including the Clery Act." (Compl. ¶ 413.) But "the Clery Act does not create a private cause of action against any college, university, or employee." *Mathews v. Clark Atlanta Univ.*, No. 1:17-cv-2963-MLB, 2021 WL 4896330, at *10 (N.D. Ga. Feb. 23, 2021). "Plaintiff cannot circumvent the lack of Clery Act private right of action by recharacterizing the cause of action as a state law breach of contract claim." *Id*.

contract formation because the Complaint is devoid of any facts establishing the parties' mutual assent to the policy.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Assent to the terms of the contract requires that "[b]oth parties [] assent to the same thing in the same sense, and their minds must meet as to all the terms." *BDI Laguna Holdings v. Marsh*, 301 Ga. App. 656, 664, 689 S.E.2d 39, 46 (2009). To determine assent, "Georgia courts have adopted an objective theory . . . [and] look for the intent of the parties as objectively manifested in what they have communicated to one another rather than their unexpressed subjective intent." *Pargar, LLC v. CP Summit Retail, LLC*, 316 Ga. App. 668, 673, 730 S.E.2d 136, 141 (2012). Plaintiff bears the burden of proving assent. *See Broughton v. Johnson*, 247 Ga. App. 819, 819, 545 S.E.2d 370, 371 (2001). She has not done so here.

Plaintiff's conclusory allegations that, upon her matriculation, she entered into a valid contractual relationship with Emory are insufficient to establish mutual assent. (Compl. ¶¶ 11, 25-27, 409). "To have an enforceable agreement, 'the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent . . . to the same thing in the same sense,

and their minds must meet as to all the terms.'" *Doe v. Emory Univ.*, No. 1:20-cv-2002-TWT, 2021 WL 358391, at *5 (N.D. Ga. Jan. 22, 2021).  Because Plaintiff fails to plead mutual assent to the terms of the Sexual Misconduct Policy, Plaintiff's breach of contract claim must to be dismissed outright.

Furthermore, there can be no assent to the terms of the Sexual Misconduct Policy because Emory may unilaterally alter or modify the policy at will, at any time, and in its sole discretion.  In *Municipal Electric Authority of Georgia v. City of Calhoun*, the Georgia Court of Appeals observed that "if any term of the contract is amendable at the will of [one party], the entire contract would be void for vagueness because there could be no assent of the parties to the terms of the contract."  227 Ga. App. 571, 573, 489 S.E.2d 599, 602 (1997).

Plaintiff acknowledges that Emory's Sexual Misconduct Policy was amended after she submitted her complaint against John Doe.  (Compl. ¶ 176.)  All Emory community members are advised of the University's unilateral right to revise the Sexual Misconduct Policy on the Emory University Policies webpage, which provides a general disclaimer indicating that "[i]ndividual policies and procedures are updated as needed[.]"[13]  And Emory Law's Student Handbook, which explicitly

---

[13]   *See* Emory University Policies, https://policies.emory.edu/policies-list.html (last visited Feb. 1, 2022).

incorporates University rules, including the Sexual Misconduct Policy, provides: "This Student Handbook may be amended by majority vote of the law school faculty. New versions and amendments will be effective dated and posted to the Emory Law website." (Ex. A at p. 88.) Because different versions of the Sexual Misconduct Policy can and have in fact existed over time, subject to Emory's unilateral right of revision, the Sexual Misconduct Policy upon which Plaintiff purportedly bases her claim is unenforceable as a contract as a matter of Georgia law. Plaintiff's breach of contract claim necessarily must be dismissed.

## B. Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing Claim (Count VI).

Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because it is not an independent cause of action recognized under Georgia law. Moreover, where a plaintiff brings claims for breach of contract and breach of the covenant of good faith and fair dealing, the latter is duplicative of the former and does not provide an independent basis for liability. *See Stuart Enters. Int'l, Inc. v. Paykan, Inc.*, 252 Ga. App. 231, 234, 555 S.E.2d 881, 884 (2001).

Here, Plaintiff's claim for breach of the covenant of good faith and fair dealing does not cite to any contract or specific contractual provision alleged to have been violated. Instead, it relies on the same assertions attendant to Plaintiff's breach of contract claim. Because Plaintiff's breach of contract claim is ripe for immediate

dismissal, so, too, is her breach of the covenant of good faith and fair dealing claim.

## IV.    PLAINTIFF'S COMPLAINT IS A "SHOTGUN" PLEADING.[14]

Plaintiff's **121-page, 432 paragraph Complaint** is a quintessential shotgun

pleading.  A "shotgun" pleading fails to "identify claims with sufficient clarity to

enable the defendant to frame a responsive pleading."  *Beckwith v. Bellsouth*

*Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).  The Eleventh Circuit

"ha[s] identified four rough types or categories of shotgun pleadings," two of which

we find in this case: (1) "a complaint containing multiple counts where each count

adopts the allegations of all preceding counts, causing each successive count to carry

all that came before and the last count to be a combination of the entire complaint";

and (2) "a complaint that does not commit the mortal sin of re-alleging all preceding

counts but is guilty of the venial sin of being replete with conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action."  *Weiland*

*v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

First, the Complaint incorporates **all** preceding paragraphs into each count,

making it difficult to distill the subject of Plaintiff's claims.  For example, the first

---

[14]    If this Court declines to dismiss the Complaint in its entirety pursuant to
Federal Rule of Civil Procedure 12(b)(6), Emory moves in the alternative for this
Court to order Plaintiff to replead her shotgun Complaint pursuant to Federal Rule
of Civil Procedure 12(e).

paragraph of Count VI "incorporates all [422] preceding paragraphs by reference as though fully stated herein."  (Compl. ¶ 423.)  This very practice of incorporating by reference the allegations of all preceding paragraphs and including irrelevant factual allegations has been expressly condemned by the Eleventh Circuit.  *See Weiland*, 792 F.3d at 1321 n.11 (collecting cases).

Second, the Complaint, which contains 367 individually numbered paragraphs in the "fact" section alone, is replete with conclusory, vague, and immaterial purported averments not obviously connected to any particular cause of action.  *See Weiland*, 792 F.3d at 1321.  As a result, Emory is left to guess the facts upon which Plaintiff actually relies on to support her numerous claims.  The mayhem contained in the Complaint cannot be condoned by this Court.  *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (noting that the Eleventh Circuit has filled many pages of the Federal Reporter condemning shotgun pleadings and explaining their vices).

## CONCLUSION

WHEREFORE, because none of Plaintiff Jane Doe's pleading deficiencies are subject to cure, Defendant Emory University respectfully requests that this Court **GRANT** the instant Motion and dismiss Plaintiff's Complaint in its entirety and with prejudice as a matter of law.

This 1st day of February, 2022.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054
John M. Hamrick
Georgia Bar No. 322079
Megan C. Eckel
Georgia Bar No. 542556

Regions Plaza, Suite 1800
1180 West Peachtree Street
Atlanta, Georgia 30309
Telephone:  (404) 817-8500
Facsimile:  (404) 881-0470
E-Mail:  joshua.bosin@hklaw.com
E-Mail:  john.hamrick@hklaw.com
E-Mail:  megan.eckel@hklaw.com

Counsel for Defendant
Emory University

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| **v.** | ) | **1:21-cv-04859-TWT** |
| | ) | |
| **EMORY UNIVERSITY,  INC.,** | ) | |
| **a Georgia Nonprofit Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**LR 7.1(D) FONT COMPLIANCE CERTIFICATION**

The undersigned counsel certifies that the within and foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** was prepared using Times New Roman 14 point in accordance with Local Rule 5.1 of the United States District Court for the Northern District of Georgia.

This 1st day of February, 2022.

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| **v.** | ) | **1:21-cv-04859-TWT** |
| | ) | |
| **EMORY UNIVERSITY,  INC.,** | ) | |
| **a Georgia Nonprofit Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served a true and correct copy of the within and foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following Counsel of Record:

Lisa Anderson
Atlanta Women for Equality
P.O. Box 33521
Decatur, Georgia  30333
E-Mail:  lisa@atlantawomenforequality.org

This 1st day of February, 2021.

s/ Joshua I. Bosin
Joshua I. Bosin
Georgia Bar No. 143054
